**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES GOERLICH,<br><br>            Petitioner,<br><br>    v.<br><br>GEORGE JAIME,<br><br>            Respondent. | No.  2:19-CV-2121-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, and Respondent's answer, ECF No. 8.  Respondent has lodged the state court record, ECF No. 9.  Petitioner has declined to file a traverse.

**I.  PETITIONER'S CLAIM**

For his only claim, Petitioner contends the trial court violated his rights under the Confrontation Clause of the Sixth Amendment.  See ECF No. 1, pg. 4.  Petitioner offers the following preamble outlining his claim:

> Late on the night of September 21, 2014, petitioner Charles Goerlich and co-defendant Marcos Roy ventures into a vacant lot in Sacramento in an ill-advised attempt to recover items stolen from the car of Danielle Goerlich, petitioner's sister and Roy's fiancé.  Both men were with semi-automatic weapons.

1

While Roy and petitioner were at a homeless encampment in the vacant lot, Richard Ashwood, who lived at the encampment, and his uncle Raymond Hayes, showed up. In the ensuing confrontation, Roy and petitioner drew their weapons, ordered the other two men to lie on the ground, and used zip ties to restrain Hayes.

The core issue at the trial was whether the use of the forearms and restraints was justified as self-defense. The central issue on appeal was whether Ashwood's refusal testify to facts related to the defense violated petitioner's confrontation rights.

ECF No. 1, pg. 7.

## II. STATE COURT DETERMINATION

The California Court of Appeal addressed Petitioner's claim on direct appeal. The court first summarized the cross-examination at issue as follows:

Following an uneventful cross-examination by Roy's counsel, questioning was turned over to Goerlich's counsel. The cross-examination began well enough, with Richard responding appropriately and cooperatively to questions. The mood changed, however, when Goerlich's counsel attempted to impeach Richard with his preliminary hearing testimony. The following colloquy occurred:

"[RICHARD:] Do you know what? I'm answering no more of these questions. Because, uhm, you—you know, because it's getting ridiculous. Stick to the fact of what happened to me.

"[COUNSEL:] I'm getting to that.

"[RICHARD:] No, you're not.

"[COUNSEL:] Okay.

"[RICHARD:] You are trying to cross me, and I'm not trying to have it.

"[COUNSEL:] Okay.

"[RICHARD:] I'm trying to move on."

Goerlich's counsel moved to strike Richard's testimony. The trial court declined to rule on the motion, stating, "Just ask a question." Goerlich's counsel then posed a series of questions about the incident and Richard's prior testimony. Richard responded that he could not remember to almost every question.

Things went downhill from there. Richard refused to respond to the next set of questions, stating, "I answered all that already" and "I'm through with that." The prosecutor, taking cues from Richard, objected on the ground that the questions had been asked and answered, and the trial court sustained the objections.

2

The cross-examination continued in this manner for some time, with Richard responding to some questions, and refusing to respond to others. Richard appears to have reached his limit when asked whether his assailants wore a shirt with a star emblem, stating, "Next question. I'm—I answered all that already. I don't—I don't know how to answer that, so I'm not even going to try—even try. I want to stick to the point. I'm the victim in this. Right now, my nerves are so bad. I'm not answering no more of your questions. If there's same question you comin' back at me with right now, I'm not going to answer it, 'cause it hurts for me to even be going through it—this information right now. Ask me a simple question."

Goerlich's counsel pressed on, posing a new series of questions about the incident. Richard, now seemingly fed up with the entire process, mostly refused to respond, stating either, "I answered that question already" or "I don't remember." When Goerlich's counsel again attempted to impeach Richard with prior inconsistent statements from the preliminary hearing, Richard erupted, "Get back to the facts of the case. I'm a victim in this case. You treat me like I'm a criminal. I'm not going to answer no more of your questions." The following colloquy then took place:

"[COUNSEL:] You are a criminal. You've been convicted of crimes.

"[TRIAL COURT:] I'll sustain that—objection. That [w]as argumentative the way it was phrased. If you want to impeach him, you may do so.

"[COUNSEL:] You have a prior felony conviction, don't you?

"[RICHARD:] I don't remember none of that.

"[COUNSEL:] You don't remember?

"[RICHARD:] No.

"[COUNSEL:] Being convicted, felony receiving stolen property?

"[RICHARD:] What does that got to do with me being a victim? I'm not going to answer that.

"[COUNSEL:] Okay.

"[RICHARD:] That ain't got nothin' to do with this case. What my past got to do with this case. Stick—

"[COUNSEL:] But you are a convicted felon.

"[RICHARD:] No, I'm not.

"[COUNSEL:] You are not a convicted felon?

"[RICHARD:] No.

"[COUNSEL:] Okay.

3

> "[RICHARD:] Stick to the basis of the case, why I'm here. I'm here for something that happen to me. How would you feel if somebody took guns, flashlights in your eyes and threaten you and terrorize you and traumatize you for 15 to 20 minutes? And you sittin' there asking me all these all weird questions. Stick to the facts of the case.
>
> "[COUNSEL:] Well, if somebody ran up to me in an aggressive manner, I may have to take aggressive actions.
>
> "[RICHARD:] Well—well, would—that's your—that's—that ain't got nothin' to do with me. I'm sticking to this case right now. I'm not going to answer none of your questions no more. So you be through with it. Go to lunch or something."
>
> Goerlich's counsel concluded his cross-examination shortly thereafter. The parties later stipulated that Richard had suffered seven felony convictions between 1987 and 2000.

ECF No. 9-19, pgs. 6-8.

As to the merits of Petitioner's claim, the California Court of Appeal stated:

> Goerlich contends the trial court violated his confrontation rights by allowing Richard to refuse to respond to questions on cross-examination. The People respond that Goerlich's confrontation clause claim has been forfeited. We agree with the People. Nevertheless, we exercise our discretion to address the constitutional issue on the merits to forestall the claim that Goerlich's counsel provided constitutionally ineffective assistance by failing to raise the issue at trial. (See, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 621; *People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151.)
>
> The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with witnesses against him. The United States Supreme Court has held the confrontation right is " ' "fundamental" ' " and " 'is made obligatory upon the States by the Fourteenth Amendment.' " (*Pointer v. Texas* (1965) 380 U.S. 400, 403.) " 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " (*Davis v. Alaska* (1974) 415 U.S. 308, 315-316, italics omitted.) "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . [T]he crossexaminer is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.,* discredit, the witness." (*Id.* at p. 316.) Hence, the "constitutional right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility" (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 841-842), and " 'cross-examination to test the credibility of [the] witness is to be given wide latitude' " (*People v. Redmond* (1981) 29 Cal.3d 904, 913, disapproved on other grounds in *People v. Cortez* (2016) 63 Cal.4th 101, 117-121).
>
> " ' "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.' " [Citations.]' [Citation.] [¶] That opportunity may be denied if a witness refuses to answer questions, but it is not denied if a witness cannot

4

> remember. A witness who 'refuses to answer any question on direct or cross-examination denies a defendant the right to confrontation which contemplates a meaningful opportunity to cross-examine the witness. [Citations.]' [Citations.] [¶] By contrast, a witness who suffers from memory loss—real or feigned—is considered 'subject to cross-examination' because his presence and responses provide the 'jury with the opportunity to see [his] demeanor and assess [his] credibility.' " (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1390-1391.)
>
>    Goerlich was provided an adequate opportunity to cross-examine Richard. Although Richard was frequently uncooperative, he responded substantively to many of defense counsel's questions, including several specific questions about the incident. Unlike *People v. Rios* (1985) 163 Cal.App.3d 852, on which Goerlich relies, this was not a case in which the witness refused to answer any questions at all. The jury had ample opportunity to observe Richard's demeanor and evaluate his credibility. (*People v. Foalima, supra,* 239 Cal.App.4th at pp. 1390-1391.) While Richard's refusal to answer many of defense counsel's questions " 'narrowed the practical scope of cross-examination, [his] presence at trial as a testifying witness gave the jury the opportunity to assess [his] demeanor and whether any credibility should be given to [his] testimony or [his] prior statements. This was all the constitutional right to confrontation required.' [Citation.]" (*People v. Homick* (2012) 55 Cal.4th 816, 861.) Furthermore, Richard was a prosecution witness and, "to the extent that his behavior on the stand reflected poorly on his credibility, it benefited defendant." (*Ibid.*) Indeed, Goerlich's counsel urged the jury to consider Richard's uncooperative demeanor during closing argument, adding that, despite Richard's failure to conform to courtroom procedure and protocol, "I impeached him."
>
>    We conclude that Richard's testimony did not violate Goerlich's confrontation rights. . . .
>
> ECF No. 9-18, pgs. 15-17.

The California Supreme Court denied review without comment or citation. See ECF No. 9-20.

### III.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must

5

review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

1  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice
2  created by state conduct at trial because the Court had never applied the test to spectators'
3  conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's
4  holdings. See Carey, 549 U.S. at 74.

5  In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a
6  majority of the Court), the United States Supreme Court explained these different standards. A
7  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by
8  the Supreme Court on the same question of law, or if the state court decides the case differently
9  than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state
10 court decision is also "contrary to" established law if it applies a rule which contradicts the
11 governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate
12 that Supreme Court precedent requires a contrary outcome because the state court applied the
13 wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court
14 cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at
15 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine
16 first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6
17 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal
18 habeas relief is warranted. See id. If the error was not structural, the final question is whether the
19 error had a substantial and injurious effect on the verdict, or was harmless. See id.

20 State court decisions are reviewed under the far more deferential "unreasonable
21 application of" standard where it identifies the correct legal rule from Supreme Court cases, but
22 unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S.
23 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested
24 that federal habeas relief may be available under this standard where the state court either
25 unreasonably extends a legal principle to a new context where it should not apply, or
26 unreasonably refuses to extend that principle to a new context where it should apply. See
27 Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court
28 decision is not an "unreasonable application of" controlling law simply because it is an erroneous

7

1  or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,
2  75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even
3  where the federal habeas court concludes that the state court decision is clearly erroneous. See
4  Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper
5  deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75.
6  As with state court decisions which are "contrary to" established federal law, where a state court
7  decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless
8  unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

9  The "unreasonable application of" standard also applies where the state court
10 denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d
11 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions
12 are considered adjudications on the merits and are, therefore, entitled to deference under the
13 AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.
14 The federal habeas court assumes that state court applied the correct law and analyzes whether the
15 state court's summary denial was based on an objectively unreasonable application of that law.
16 See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

17
18                                      **IV.  DISCUSSION**
19 As an affirmative defense, Respondent first argues that Petitioner's claim is
20 procedurally barred. See ECF No. 8, pg. 17. Respondent also contends Petitioner is not entitled
21 to relief on the merits because the state court's determination was neither contrary to nor based on
22 an unreasonable application of clearly established federal law. See id. at 17-21. Petitioner has
23 not responded to either argument. The Court first addresses the merits.
24 Under the Sixth Amendment's Confrontation Clause, "[i]n all criminal
25 prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against
26 him." U.S. Cons. Amend. VI; see also Crawford v. Washington, 541 U.S. 36, 42 (2004).
27 "Generally speaking, a court violates the Confrontation Clause only when it prevent a defendant
28 from examining a particular and relevant topic. . . ." Fenenbock v. Dir. of Corr. for Cal., 692 F.3d

910, 919 (9th Cir. 2012). The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination "that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). The Confrontation Clause includes no guarantee that witnesses will not be evasive. See Delaware v. Fensterer, 474 U.S. at 22. So long as the defense is provided a "full and fair opportunity to probe and expose. . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony," the Confrontation Clause is satisfied. Id.

On the merits, Respondent argues:

> Here, the state court reasonably applied the applicable Supreme Court precedents to conclude that Petitioner's confrontation rights had not been violated. The court first recognized the appropriate and controlling federal law. (Lodged Doc. 22 at 15-16.) Based on that law, the court held that Petitioner "was provided an adequate opportunity to cross-examine Richard." (Lodged Doc. 22 at 16.) In reaching this conclusion, the court found that Richard "responded substantively to many of defense counsel's questions, including several specific questions about the incident" and therefore this was not a case in which the witness refused to answer any questions at all. (Lodged Doc. 22 at 16.) Further, the court found that "[t]he jury had ample opportunity to observe Richard's demeanor and evaluate his credibility." (Lodged Doc. 22 at 16.)
>
> Nothing in the state court's opinion is contrary to established Supreme Court precedent. The trial court in this case did not preclude Petitioner from cross-examining Richard on any specific topic relevant to his credibility. Thus, the circumstances were different from Supreme Court cases finding a Confrontation Clause violation based on an improper limitation on the scope of cross examination. *See Olden v. Kentucky*, 488 U.S. at 231; *Delaware v. Van Arsdall*, 475 U.S. at 678-679; *Davis v. Alaska*, 415 U.S. at 315-316. Instead, the circumstances in this case were most similar to Supreme Court precedents finding no Confrontation Clause violation when a witness is unable to answer questions on cross-examination due to a memory lapse. *See United States v. Owens*, 484 U.S. at 558; *Delaware v. Fensterer*, 474 U.S. at 22. Indeed, the state court's holding in this case is fully consistent with the Supreme Court's observation that "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Delaware v. Fensterer*, 474 U.S. at 22.
>
> At most, Richard's recalcitrance during cross-examination rendered the cross-examination less effective than Petitioner would have liked. The Confrontation Clause, however, guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. at 679. Petitioner's dissatisfaction with the cross-examination that was conducted does not establish a Confrontation Clause violation, much less show that the state

court's decision was unreasonable. The state court concluded that Petitioner was afforded a sufficient opportunity to cross-examine Richard on any relevant matter, and further, that "[t]he jury had ample opportunity to observe Richard's demeanor and evaluate his credibility." (Lodged Doc. 22 at 16.) This conclusion was reasonable. These findings are amply supported by the record and are consistent with applicable Supreme Court precedent. Petitioner has not carried his burden of demonstrating that the state court acted unreasonably in denying his Confrontation Clause claim.

\* \* \*

Moreover, as noted by the state court, the jury had ample opportunity to observe Richard's testimony on direct and during two cross-examinations to sufficiently evaluate his credibility. And, Richard's evasive and hostile attitude during cross-examination likely had a negative effect on his credibility. Indeed, Petitioner's counsel argued to the jury that Richard's conduct on the stand demonstrated his character and unwillingness to play by the rules. (3 RT 854-855.)

Given the cumulative testimony by Raymond, and the jury's substantial opportunity to observe Richard's demeanor on the stand, any error in failing to strike some or all of Richard's testimony did not have a substantial and injurious effect on Petitioner's case. Accordingly, his federal habeas petition should be denied.

ECF No. 8, pgs. 19-22.

Respondent also contends any error was harmless:

Moreover, any error did not have "[a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In addition to Richard, the other victim, Raymond, testified about the assault and false imprisonment. In general, the testimony of the two men was consistent. (Lodged Doc. 22 at 5 ("Raymond and Richard both averred that they were confronted by two armed men who ordered them to the ground at gunpoint, questioned and searched them, and instructed them to stay on the ground until they were gone").) In addition, the jury heard the recording of Raymond's call to the police on the night of the incident. (Lodged Doc. 22 at 3.)

ECF No. 8, pg. 21.

As the state court's decision reflects, Petitioner was provided an opportunity cross-examine Ashwood. On cross-examination, Ashwood was clearly evasive. Ashwood's evasiveness, however, did not deprive Petitioner of his right to confrontation. See Delaware v. Fensterer, 474 U.S. at 22. To the contrary, Ashwood's evasiveness – apparent because the trial court permitted him to testify – provided Petitioner an opportunity to confront the witness by allowing the jury to see it firsthand. The trial court allowed the jury to freely conclude whether Ashwood's evasiveness, if that's what the jury saw, undermined his testimony.

10

Because the state court applied the facts to the controlling federal law, this Court must decide whether the state court's determination was based on an unreasonable application of the facts. For the reasons discussed above, The Court agrees that Petitioner is not entitled to relief because the state court's determination was not based on an unreasonable application of the facts. Because the Court finds no error, it is not necessary to address whether the state court's error was harmless. Moreover, because the Court finds that Petitioner is not entitled to relief on the merits of his claim, the Court does not consider whether the claim is procedurally barred as any such opinion would be unnecessary to the ultimate result.

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 14, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE